UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 23-CV-22722-SCOLA/GOODMAN

CONSULTING ROSA LLC.,

      Plaintiff,

v.

MINHOU RONGXINGWANG
E-COMMERCE CO., LTD.,

      Defendant.

_____/

REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANT

In this trademark infringement action, Plaintiff Consulting Rosa LLC ("Plaintiff") filed a motion for final default judgment against Defendant Minhou Rongxingwang E-Commerce Co., Ltd. ("Defendant"). [ECF No. 16]. Defendant did not file a response to Plaintiff's motion and the response deadline has now expired.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate Judge Rules." [ECF No. 17]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant in part** and **deny in part** the Motion [ECF No. 16].

## I.      Background

Plaintiff filed a two-count Complaint alleging trademark infringement, unfair competition, and false designation of origin pursuant to the Lanham Act, 15 U.S.C. § 1125(a), (Count I) and trademark infringement and unfair competition pursuant to Florida common law, (Count II) [ECF No. 1]. The Complaint alleges that Defendant "adopted and began using Plaintiff's Mark after Plaintiff's first use of the 5MINSKIN trademark in the United States." *Id*. at ¶ 29.

Plaintiff states that it began marketing and selling its "Goods and Services throughout the United States using the 5MINSKIN trademark ("Plaintiff's Mark") at least as early as November 1, 2022." *Id*. at ¶ 8. Within its first two weeks of sales, it sold more than 550 units of products in the United States with Plaintiff's Mark. *Id*. at ¶ 9. "On February 28, 2023, Plaintiff filed with the U.S. Patent and Trademark Office ("USPTO") Application Serial No. 97/814920, for 5MINSKIN (stylized), for 'laser hair removal apparatus, other than for medical purposes' in Class 8." *Id*. at ¶ 12.

The Complaint alleges that "Defendant began selling hair-removal products" branded with Plaintiff's Mark on or around December 30, 2022. *Id*. at ¶ 15.

> On February 5, 2023, Defendant filed with the USPTO Application Serial No. 97/781243, for 5MINSKIN, for 'Depilation appliances, electric and non-electric; Depilatory appliances; Electric depilatory appliances; Electric epilatory appliances; Electrolysis apparatus for hair removal; Epilatory appliances; Laser hair removal apparatus, other than for medical purposes' in Class 8, **claiming a date of first use in commerce as December 30, 2022**.

*Id*. at ¶ 16 (emphasis added).

The Complaint states that when Defendant filed its trademark application, "Plaintiff had registered and launched its website at www.5minskin.com, registered multiple social media accounts using the profile or username 5MINSKIN, and invested in obtaining digital ads and sponsorships for purposes of online search engine optimization and recognition." *Id*. at ¶ 17. Plaintiff argues that Defendant's use of an identical mark,

> for goods identical, nearly identical, directly competing, and/or overlapping to Plaintiff's Goods and Services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities.

*Id*. at ¶ 31.

The Complaint further asserts that Defendant's unlawful activities have "been committed with the intent to cause confusion, mistake, and to deceive, and were otherwise deliberate and/or in bad faith." *Id*. at ¶ 33. Plaintiff contends that it is entitled to injunctive relief in accordance with 15 U.S.C. § 1116(a), as well as damages and attorneys' fees in accordance with 15 U.S.C. § 1117(a). *Id*. at ¶¶ 34–36.

Plaintiff moved for and obtained a Clerk's Default against Defendant. [ECF Nos. 12; 13]. Plaintiff now seeks the entry of a default judgment in its favor and against Defendant, $600,000 in statutory damages, $928.30 in costs, and the entry of a permanent

injunction. [ECF No. 16].

## II.    Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–

---

[1]    In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

## III. Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

### a. Subject-Matter Jurisdiction

5

The Complaint [ECF No. 1] alleges causes of action under the Lanham Act. Therefore, the Court has original subject-matter jurisdiction over the instant action. *See Ethos Grp., Inc. v. JAB Media, LLC*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4187097, at *2 (M.D. Fla. May 25, 2023), *report and recommendation adopted*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4181070 (M.D. Fla. June 26, 2023) ("Because this action arises under the Lanham Act, the Court has original subject-matter jurisdiction." (record citation omitted)). The Court also has supplemental jurisdiction over Plaintiff's common law claims because they "are so related to" Plaintiff's federal law claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

b.     **Personal Jurisdiction**

In addition to subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that

6

a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

### i.      Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiff filed a motion seeking authorization for electronic service of process pursuant to Federal Rule of Civil Procedure 4(f)(3) and 15 U.S.C. §1051, which the Court granted. [ECF Nos. 7; 8].

The Court authorized Plaintiff to serve Defendant as follows:

> Plaintiff is permitted to serve the Summonses, Complaint, and all other filings and discovery in this matter upon [ ] Defendant by serving [ ] Defendant's trademark prosecution counsel, Ms. Tao, and, if service via Ms. Tao should fail, by serving the Director of the USPTO pursuant to 15 U.S.C. § 1051(e). In so doing, [ ] Plaintiff must ensure to fully comply with the requirements of Rule 4(h)(1)(B).

[ECF No. 8, p. 4].

Plaintiff filed a proof of service indicating that it served Defendant via e-mail and mail (FedEx) to Defendant's trademark prosecution counsel, Ms. Tao. [ECF No. 9]. Plaintiff served Ms. Tao with a copy of the Complaint, the summons, the civil cover sheet, and a copy of the Court's Order granting its motion for alternative service. *Id*.

Plaintiff effectuated service of process in the instant case because it complied with Judge Scola's Order authorizing alternative service of process over Defendant. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, No. 21-23480-CIV, 2022 WL 17144227 (S.D. Fla. Nov. 22, 2022) (finding defendants have been "properly served . . . with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service"); *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff [had] properly effected service on [the] [d]efendants pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

### ii.  Amenability to Jurisdiction

The Complaint alleges "[u]pon information and belief, Defendant Minhou Rongxingwang E-commerce Co., Ltd. is a Chinese company with a principal place of business at No.11, Ganbei 1st Lane, Shuangchi Village, Sugarcane Street, Minhou County, Fuzhou, Fujian China 350000 [ECF No. 1, ¶ 3]. "The plaintiff has the burden of establishing a *prima facie case* of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a *prima facie* case of personal jurisdiction over non-resident defendants.").

In *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, this Court determined that it had "personal jurisdiction over the [d]efendants" because they had been served in accordance with the "Court's order authorizing alternative service" and:

> [the] [d]efendants directly target[ed] their business activities toward consumers in the United States, including Florida, and . . . [were] reaching out to do business with Florida residents by operating one or more commercial, interactive internet stores on internet marketplaces where

Florida residents [could] purchase products bearing infringing and/or counterfeit trademarks belonging to the [p]laintiff.

No. 23-CV-21333, 2023 WL 3392684, at *2 (S.D. Fla. May 10, 2023).

Similarly here, the Complaint alleges that:

5. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant **regularly does business in this district and derives substantial revenue in this district**, including without limitation, by selling products to **Florida-based** customers in the **greater Miami and surrounding areas** and promoting its products to **Florida** residents throughout **this judicial district**.

[ECF No. 1, ¶ 5 (emphasis added)].

Because "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact,"[2] these established facts provide a basis for this Court's personal jurisdiction over Defendant. *See TWOWS, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 823CV00139WFJMRM, 2023 WL 2837693, at *2 (M.D. Fla. Apr. 7, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has specific personal jurisdiction over the [d]efendants. [The] [d]efendants, alleged to be residing or operating in outside the United States, and are alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. § 48.193(1)(b).").[3]

---

[2]     *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

[3]     *See also*, *Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *2 (M.D. Fla. Feb. 14, 2023) ("[The]

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over Defendant.

**c.      Liability**

As noted above, the Complaint includes two counts. Count 1 alleges trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a). [ECF No. 1]. Count 2 alleges trademark infringement and unfair competition under Florida common law. *Id.*

"[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (quoting *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on Count I's trademark infringement claim, Plaintiff must show: "(1) that [the]

---

[p]laintiff has demonstrated a *prima facie* showing that this Court has personal jurisdiction over the [d]efendants, who are alleged to be residing or operating in the People's Republic of China, because the [d]efendants directly target their business activities toward consumers in the United States, including Florida. Specifically, [the] [p]laintiff has provided a basis to conclude that [the] [d]efendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more [s]eller [a]liases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold the same product that infringes directly and/or indirectly [the] [p]laintiff's patent-in-suit to residents of Florida.").

mark has priority and (2) that [ ] [D]efendant's mark is likely to cause consumer confusion." *Id.*

Plaintiff sufficiently alleged and established each of these elements: (1) Plaintiff's ownership of the 5MINSKIN Mark preceded Defendant's infringement; (2) Defendant is selling, offering for sale, and marketing products with the 5MINSKIN Mark without Plaintiff's consent or authorization; and (3) the mark used on the products Defendant is selling, offering for sale, and marketing is similar enough to Plaintiff's Mark that it is likely to cause consumer confusion. [ECF No. 1, ¶¶ 7–24; 27–31]. Accordingly, Plaintiff is entitled to a default judgment on its Lanham Act trademark infringement claim (Count I).

"The elements of a claim for false designation of origin are: '(1) that the plaintiff had enforceable trademark rights in the mark or name[ ] and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two.'" *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 247872, at *11 (S.D. Fla. Jan. 25, 2021) (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017)).

The test for liability for false designation of origin is the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the subject marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As already

noted, Plaintiff's well-pled allegations establish its ownership of the 5MINSKIN Mark and there is a likelihood of consumer confusion due to Defendant's use of it. [ECF No. 1, ¶¶ 7–24; 27–31]. Thus, Plaintiff is entitled to a default judgment on its Lanham Act false designation of origin claim (Count I).

Plaintiff also alleged common law causes of action for unfair and trademark infringement (Count II). "[T]he Florida common law trademark infringement and unfair competition analysis is essentially the same as the federal trademark infringement analysis." *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255-RAR, 2020 WL 6700449, at *2 (S.D. Fla. Oct. 20, 2020) (citing *Marine v. Black Fin Yacht Corp.*, No. 8:15-CV-1210-T-27AEP, 2016 WL 5106948, at *5 (M.D. Fla. Sept. 20, 2016)). Because Plaintiff has shown that it is entitled to a default judgment in its favor on its federal trademark infringement claim, it is also entitled to a default judgment in its favor on its common law trademark infringement and unfair competition claim.

Here, the well-pled allegations in the Complaint, deemed admitted by virtue of Defendant's default,[4] establish Defendant's liability for each of the claims asserted. Moreover, the Complaint's factual allegations have been substantiated by the declaration (signed under penalty of perjury, pursuant to 28 U.S.C. § 1746) of Liron Ravid, Plaintiff's Chief Executive Officer. [ECF No. 16-1]. Therefore, Plaintiff has shown that Defendant is

---

[4]    *Perez*, 774 F.3d at 1339.

liable for trademark infringement, unfair competition, and false designation of origin under the Lanham Act, as well as trademark infringement and unfair competition under Florida common law.

### d.     Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed. 1998)).

Here, Plaintiff seeks equitable relief and monetary (statutory) damages. As discussed below, Plaintiff is entitled to the relief requested.

### i.     Injunctive Relief

Plaintiff seeks the issuance of a permanent injunction. [ECF No. 16]. The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted). Moreover, injunctive relief is available "even in the default judgment setting[ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-20744, 2022 WL 1109849, at *4 (S.D. Fla. Mar. 24, 2022), *report and recommendation adopted sub nom. Animaccord Ltd. v. Individuals, P'ships, or Unincorporated Ass'ns Identified on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (internal citation omitted).

To obtain a permanent injunction, Plaintiff must show: (1) irreparable injury; (2) an inadequate remedy at law; (3) that the balance of hardships weigh in favor of issuing an injunction; and (4) the issuance of an injunction would not disserve the public interest.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

All four factors are met here. Plaintiff has shown that Defendant is promoting, advertising, distributing, offering for sale, and/or selling goods using Plaintiff's Mark on "the same geographic regions to the same class of purchasers and through the same trade channels and online marketplaces" as Plaintiff. [ECF No. 1, ¶ 23]. Therefore, consumers will continue to be confused by Defendant's unauthorized use of Plaintiff's Mark.

Additionally, so long as Defendant continues its infringing and counterfeiting activities, Plaintiff loses its ability to control its Mark and will continue to suffer irreparable harm to its reputation and goodwill.[5] *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." (citation omitted)).

---

[5]    Plaintiff states that based on the online reviews of Defendant's products utilizing Plaintiff's Mark, Defendant's products are of a "poor quality and lack or [have] diminished functionality." [ECF No. 16-1, ¶¶ 14, 15]. Therefore, Plaintiff asserts a related allegation: "Because Defendant's product bears Plaintiff's Mark, consumers have negatively associated Defendant's poor-quality product with Plaintiff's Mark." *Id*. at ¶ 16.

16

Plaintiff has also shown that no adequate remedy at law exists because monetary damages alone will not redress the harm to it from Defendant's infringement. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The] [p]laintiff has no adequate remedy at law so long as [the] [d]efendants continue to operate the [s]ubject [d]omain [n]ames and [s]eller IDs because [the] [p]laintiff cannot control the quality of what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to [the] [p]laintiff's reputation and goodwill that will result if [the] [d]efendants' infringing and counterfeiting actions are allowed to continue." (record citation omitted)).

The balance of harms also weighs in favor of issuing a permanent injunction. Plaintiff's injury without an injunction outweighs the impact an injunction would have on Defendant. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264 (S.D. Fla. 2019) (finding that the balance of harms favored the issuance of a permanent injunction where "[the] [p]laintiff face[d] hardship from loss of sales and its inability to control its reputation in the marketplace," whereas "[the] [d]efendants face[d] no hardship if they [were] prohibited from the infringement of [the] [p]laintiff's trademarks, which is an illegal act.").

Lastly, the public interest will not be disserved if the Court were to enjoin Defendant. "[T]he public interest is served by preventing consumer confusion in the

marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996));[6] *Mantua Mfg. Co. v. Irize Mattress, Inc.*, No. 20-25036-CIV, 2021 WL 3375837, at *5 (S.D. Fla. Feb. 24, 2021) ("The public interest is served by the entry of a permanent injunction in that further confusion and mistake by the public will be prevented.").

In sum, Plaintiff has shown entitlement to permanent injunctive relief. Therefore, the Undersigned **respectfully recommends** that the District Court enter permanent injunctive relief consistent with the terms listed in paragraph IV(b)–(e) of Plaintiff's proposed final default judgment and permanent injunction [ECF No. 16-3, pp. 10–11].

### ii.      Monetary (Statutory) Damages

The Lanham Act provides multiple remedies for violations of trademark law. In addition to authorizing injunctive relief, discussed *supra*, the Lanham Act permits a successful plaintiff "to recover (1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also allows for the court-ordered turnover of counterfeit items in a defendant's possession. 15 U.S.C. § 1118.

---

[6]      Although *Davidoff & CIE, S.A.* concerned the entry of a *preliminary* injunction and the instant motion seeks the issuance of a *permanent* injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

In certain instances, the Lanham Act provides for the recovery of statutory damages:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> > (1) **not less than $1,000 or more than $200,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> >
> > (2) **if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).

"The Court has wide discretion to determine the amount of statutory damages." *Animacord Ltd.*, 2022 WL 1109849, at *5 (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004)). The Court may award statutory damages even in instances where a plaintiff cannot prove actual damages caused by a defendant's infringement. *See ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *8 (S.D. Fla. Dec. 27, 2017) (noting that "[a]n award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate

evidence of the actual damages suffered by [the] plaintiff or of the profits reaped by the [d]efendant").

The amount of statutory damages awarded should be sufficient to compensate the trademark owner *and* deter the defendant and others from infringing on that trademark. *See Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-CIV, 2023 WL 3980245, at *7 (S.D. Fla. May 19, 2023), *report and recommendation adopted*, No. 22-23295-CV, 2023 WL 3971175 (S.D. Fla. June 13, 2023) ("Statutory damages should serve the dual purposes of compensating the plaintiff and sanctioning and deterring infringers." (citing *PetMed Express*, 336 F. Supp. 2d at 1220–21)).

Here, Plaintiff seeks $600,000 in statutory damages based on Defendant's willful conduct. [ECF No. 16, pp. 11–12]. "Plaintiff's requested damage amount is at the middle range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Plaintiff's trademark, compensate Plaintiff, and punish Defendant, all stated goals of 15 U.S.C. § 1117(c)." *Id.* at 12.

The infringement in the instant case was willful:

A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" of a plaintiff's intellectual property rights. *Arista Records*, 298 F. Supp. 2d at 1312 (S.D. Fla. 2003). Willful infringement may be inferred where, as here, a defendant is willing to accept a default judgment. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla., Oct. 18, 2007).

*Sanrio Co. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *5 (S.D. Fla. Mar. 21, 2019).

The Undersigned **respectfully recommends** that the District Court award Plaintiff the statutory damages amount of $**600,000** against Defendant. This recommended statutory award will be sufficient to compensate Plaintiff, punish Defendant, and deter it and others from continuing to counterfeit or otherwise infringe on Plaintiff's trademark, consistent with the purpose of 15 U.S.C. § 1117(c). *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (awarding $100,000.00 in statutory damages per defendant in willful infringement case). The $600,000 amount is at the middle range prescribed under 15 U.S.C. § 1117 (c)(2).

### iii.    Costs

Under the Lanham Act, Plaintiff is entitled to recover the costs of the action "subject to the principles of equity." 15 U.S.C. § 1117(a). *See Pelc v. Nowak*, No. 8:11-CV-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013), *aff'd*, 596 F. App'x 768 (11th Cir. 2015). Federal Rule of Civil Procedure 54(d) allows for the recovery of costs enumerated in 28 U.S.C. § 1920. *Id*. (citing *Arlington Cent. Sch. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301, 126 S. Ct. 2455, 165 L.Ed.2d 526 (2006)).

Here, Plaintiff seeks $928.30 in costs and supported its request with a declaration from Francisco Armada, Plaintiff's counsel. Mr. Armada states that the $928.30 in costs is

attributable to: $410.70 in Pacer Court Fees; $492.10 in Westlaw Research; and $25.50 in FedEx costs for service on Defendant. [ECF No. 16-2, ¶ 4].

However, Mr. Armada's declaration fails to include *any* receipts or documentation that would provide the Court with the necessary context to properly evaluate this request. The burden is on the moving party to **explain** and **justify** the costs. *See Berenguela-Alvarado v. Castanos*, No. 19-22689-CIV, 2020 WL 7774730, at *8 (S.D. Fla. Dec. 8, 2020), *report and recommendation adopted*, 2020 WL 7770399 (S.D. Fla. Dec. 30, 2020) (declining to award costs in the absence of any "backup documentation" (citation omitted)).

Regardless of Plaintiff's failure to provide supporting documentation, Plaintiff is not entitled to recover any of the requested costs because Courts in this District have found that none of them fall within 28 U.S.C. § 1920's purview. First, "the costs for FedEx mailing are not recoverable[.]" *Netuno USA, Inc. v. Thoreux*, No. 20-62240-CIV, 2021 WL 9565806, at *2 (S.D. Fla. June 7, 2021). Second, costs associated with legal research are not recoverable. *See Gary Brown & Assoc., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 846 (11th Cir. 2008) (legal research not recoverable under § 1920); *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("[The] [p]laintiff's affidavits appear to include costs such as . . . computerized legal research . . . which are clearly nonrecoverable."). Finally, PACER fees are not taxable under § 1920. *See Glob. Patent Holdings, LLC v. Panthers BRHC LLC*, No. 08-

80013-CIV, 2009 WL 1809983, at *2 (S.D. Fla. June 25, 2009) (citing *Duckworth*, 97 F.3d at 1399). Therefore, the Undersigned **respectfully recommends** that Plaintiff's request for costs be **denied** in its entirety because of the lack of supporting documentation and lack of entitlement under § 1920.

IV.     **Conclusion**

For the reasons stated above, the Court should **grant in part** Plaintiff's motion [ECF No. 16], award $600,000 in statutory damages against Defendant, and issue a permanent injunction against Defendant. The Court should then **deny** Plaintiff's request for $928.30 in costs.

Plaintiff must provide a copy of this Report and Recommendations to Defendant in the same manner in which the Court authorized alternative service of process on Defendant. [ECF No. 8]. Plaintiff will file a notice of compliance on CM/ECF by no later than **Friday, February 23, 2024**.

V.     **Objections**

The parties will have seven (7)[7] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to

---

[7]     The Undersigned is shortening the deadlines because Defendant has defaulted, and it therefore appears unlikely that it will respond in any way, including the filing of Objections.

the other party's objection within seven (7) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on February 16, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record

24